We'll hear the last case to be argued today, United States v. Acoff. We'll hear the last case to be argued today, United States v. Ac. May it please the Court, my name is Charles Wilson. I'm from the Federal Defender's Office in Hartford, and I represented Joshua Acoff at his sentencing and now in this appeal. This appeal raises a couple of issues, somewhat disparate from each other, quite frankly. The first being that Judge Shea made a procedural error when he determined that Mr. Acoff was a career offender. The other issue being whether that incorrect finding is a harmless error, something that the government has the burden to show. As to the first issue, we focused on the question of the divisibility of the Connecticut drug statute that formed the basis for Mr. Acoff's prior conviction. He had two prior drug convictions. One was a federal one that we do not dispute as to the career offender determination, but the other one was a state one. And in light of this court's recent decisions in Harbin, and also the district court persuasive decision that we have from Judge Weinstein and Barrow. To be consistent, the Connecticut statute, because it has a controlled substance reference that points us in the direction of other statutes, this statute has to be divisible given what Mathis has told us. Now one of Judge Shea's problems was that he felt like he couldn't say that Savage had been really affected by Mathis. He clearly was asking this court for guidance. More than once, I believe, he said he's looking to the Court of Appeals to give us direction on that subject. He focused his arguments about the series of verbs in the Connecticut statute. That's how he named them. And while I will still rest on the argument that that series of verbs is also alternative means, in light of Harbin, I have to say that perhaps my strongest or more obvious argument is about the controlled substance aspect of the statute that we have in Connecticut. That statute points us in the direction of looking for other statutes and ultimately it leads us to a schedule that in Connecticut for some years has been perhaps the bane of the government's existence on this topic because it covers drugs that the federal schedule does not. The government's point, at least one of them, is that the career offender definition, particularly the controlled substance part of it, talks about state offenses and they try to sweep that as broadly as they possibly can. That approach would put the government, or adopting that approach, would put this court in somewhat of an outlier position. Obviously, it would be different than approaches with the Armed Career Criminal Act. Obviously, it would be different than the approach with the Aggravated Felony under the Immigration and Nationality Act. Now, I recognize those are different statutes. They do have somewhat different language, but it also would be putting the court at odds with approaches as to the former version of 2L1.2, which is the section that deals with immigrants that return to the United States and then illegally and then have to get deported. There's a drug trafficking offense there that's essentially the same definition as the controlled substance offense definition that's found in 4B1.2. So, other courts of appeals, in fact, have looked at that in the 2L section and said that they've taken the approach that I'm urging this court to take, which is you look to the state statute, you see if the drug schedule is different or the same. And if it's broader, that's a problem for applying something when you don't know what the person did. Now, that last part is the trick here. And- I was just going to say, perhaps we should move on to prejudice. Okay. That Shay did invite guidance from this court, but then he very carefully went through the different scenarios and said, even assuming I'm wrong, I would impose the same sentence anyway. And so, where is the prejudice? So, as to that issue, I think there's a couple of things we can look at. First is the point your honor just made, which is the sense that he's looking for guidance. And that guidance, if it comes out the way that I'm seeking it to, obviously creates a much different starting point. It creates a range, a guideline range of 37 to 46 months, if we're talking about the crack guideline ranges. If we were to talk about it in terms of powder, that would be 21 to 27 months. As, I think, any practitioner- It's clearly the law, the law requires that you start with a guideline range. And so, it's of course important to have a correct calculation. But one of the factors that he looked at was that the ACOP's prior sentence of 60 months did not serve to deter him from further criminal conduct. And therefore, something more than 60 months would be appropriate. And that was one of the reasons he came up with 84 months. I mean, that seems to be pretty, it's strong evidence that he would have done this anyway. It's strong evidence that he would have gone up. The question is, how far would he have gone? I think when, it's much easier to go down in sentencing as a district judge, I think, than it is to go up. When I negotiate with the government and they're telling me my client's a career offender, it's much easier for me to get them to talk about going down than to have them adopt my position of it being some much lower range based on just the drugs they were issuing the person's criminal history. That's a much different discussion. So I think that separates this case from some other cases the court has considered. I know very recently, I didn't get a chance to do a 28-J letter, but Genoa is a case that looks at the harmlessness of sentencing. And there you have a disparate range that would result. But the case gets sent back down, because the court, and I believe Judge Chin, you were on that. The court says, look, these facts that you're considering are still things you can consider in sentencing him, but we can't say that this is harmless. I think that's the problem we have here. I argue that the sentencing discussion was much shorter and briefer and conclusory than this one here, where Judge Shea gave a very careful discussion and explanation of his reasoning. And Judge Shea did discuss his reasoning. I'm not saying he just turned off the lights and left the room. The idea of incremental punishment, again though, while that may have been a reason to go up from the top of the range, 46. Would Judge Shea have gone to 84 if that's really where he was starting? He came down- But again, as Judge Chin pointed out, he also was observing that the prior sentence of 60 months didn't deter him, and that something more was required. And so, I think the 60 is not a bad starting point either. And maybe it is, Your Honor, but is he going to get to 84? And also bear in mind that he's then sentenced Mr. Acoff right after that hearing for an additional period of time on the supervised release violation. I can't remember if it was 12 months or exactly what, but it wasn't a nominal sentence. So it's that bridge, that gap that we're talking about. We're not talking about a- We have a trial judge here who says, even if I were starting with 37 to 46, or 21 to 27, I wouldn't do it. I think 84 is appropriate. I mean, so you're asking us, in essence, to ignore that and send it back to him. And I'm not sure what the point is of that. I'm not asking you to ignore it. I think I'm asking you to recognize what many courts have, including the Supreme Court and Melina Martinez, the idea that the guidelines provide the load star for what the sentence is. And if we start off with a career offender sentence, it's a much different analysis. I think it was Judge Sotomayor in Beckles, perhaps, that said, made some observation about the number of cases where the person's sentence went down when the career offender part was taken away. That's- Melina Martinez also says the record in the case may show that a district court thought the sentence it chose was appropriate, irrespective of the guidelines range. And don't we have such a record here? I think, given the circumstances, the large spread. If we were talking about a two level enhancement for a sophisticated means or something like that, I don't think this argument would have any water. But we're talking about a large spread. We're talking about an incremental punishment still could have found some window of time between 84 and something lower. I think that's significant. I think the fact that Judge Shea was looking for some guidance and maybe was going to start from a different position. And he always calculates the guidelines in my cases that I've had with him. I think that influence can't be overlooked. I think there's a way to, of course, I'm shooting for a full resentencing. Mr. Acoff, I've talked with him, it sounds like he's doing pretty well. I'm going to take him at his word. Perhaps there's a way to remand it, to allow Judge Shea to address this issue. If you started from 37 to 46, are you still going to get to 84 months? Kind of like we used to do with the Crosby remands. If you know that the guideline range is different, I'm not a big fan of that because obviously I want the full resentencing with the benefit of Pepper. But that would be a possibility. Let's hear from the government. Thank you. May it please the court. My name is Brian Leeming and I'm Assistant United States Attorney from the District of Connecticut. As I think the court correctly pointed out, Molino-Martinez authorized the district court to do exactly what it did. The essence of this appeal is whether or not the defendant is a career offender, but he wasn't sentenced as a career offender. No one at the sentencing hearing, not even the government, advocated that he should be treated as such, or that he should be sentenced within that range. He was sentenced to 84 months for all of the reasons that Judge Shea articulated. As the district court pointed out, he was sentenced that way because he demonstrated through his past behavior that he was an incorrigible drug dealer. That this was his third federal conviction. That he had been sentenced to terms of imprisonment up to 60 months on his previous federal case. And as the court described, he had demonstrated a determined failure to comply with the law. The court found that since 60 months wasn't reasonable, or I shouldn't say, wasn't sufficient, he had not been rehabilitated. He had not been deterred in his criminal activity. And he continued to demonstrate that he was a danger to the community, that something more than 60 months was necessary. The court contemplated, and as noted by my adversary, theorized that maybe it would be helpful by this court to give some more guidance as to whether or not Mathis impacted in any meaningful way the Savage decision. But it did what we want the district judges to do, is to consider all of the factors. He considered both competing ranges, including a one to one powder range, which was substantially lower than the crack powder range, or the crack range. And after considering all of those, and all of the other sentencing factors, he decided, irrespective of whether or not he was a career offender, that a sentence of 84 months is reasonable and appropriate. And as the court pointed out, if he's really thinking at the baseline of 60 months, we're only talking two years. Now obviously, in Mr. Acoff's life, that's significant. But in the context of what's reasonable, it's certainly appropriate and certainly within the range of reasonableness that a district judge would impose such a sentence. Here, my adversary asked for a remand or suggestion that somehow that the district judge was tethered to the larger range or the higher range. But there's no evidence of that. In fact, the district judge made it clear that he would sentence him to the same sentence, irrespective of that range. He considered even the things that he thought were in Mr. Acoff's favor in coming up with that sentence. He just didn't focus on the negative parts of his behavior. But in consideration of all that, the court did what we want our district judges to do, which is give a well thought out explanation for the sentence imposed. As far as the Genao case, as I think the court just pointed out, the record there was nothing like the record here. This is the record that we look for on review, where we can know specifically what it was the district judge thought about, considered, weighed, and then factored in before imposing sentence. So irrespective of whether there was an error in the procedure of determining Mr. Acoff's career offender status, it was certainly harmless beyond a reasonable doubt, and the government would ask that the court affirm the judgment, certainly on that basis. I'm certainly happy to address the substantive arguments, but I do believe that a resolution on those cases is maybe appropriate sometime in the future on the right case, but based upon this case, I think ultimately the court would still have to address the harmlessness of any procedural error. And based upon the record, I think the record's clear, but beyond a reasonable doubt, it was harmless. Thank you. Thank you. Rebuttal. As for the 60 month sentence that he got before, I'm looking at the pre-sentence report, paragraph 32. It's for a 2009 arrest for possession with intent to distribute five grams. And it's in federal court. And he received a 60 month sentence, and in that case, we're talking about 16.8 grams of crack cocaine, which would not trigger a five year sentence today. So the idea of incremental punishment, while there's certainly the very straightforward concept. If I give you x, now I'm going to give you x plus y. Now what that y is, I think Judge Shea should have an opportunity to speak to. But if we're going to start off with a 60 month sentence that reflects law that's been changed, and particularly law that's been changed based on recognition that there probably was some racial- That was Judge Shea's point, though. Judge Shea said that the 60 month sentence was not sufficient to accomplish the goal of protecting the public and deterring you. So he was looking at its relationship not to the crime of conviction, but to the effect it had on the defendant. So, and I'm not going to- Who went on then to commit other drug offenses. I'm not going to, I don't disagree with your Honor's reading of the record. But we're talking about a sentence that's based on a law that people have, that Congress came to subsequently recognize. And based on potentially racially discriminatory practices. And in issues of race, all the Fair Sentencing Act cases that I know I appealed, and all those things, and Mr. Hecoff's previous appeal, I think, was one where he was told, you know what, you're not going to get the benefit because you committed the offense before the change in the law, even though you might have been sentenced afterwards. And then Dorsey and Hill and everything else came out. So I think if we're going to rely on that 60 month sentence, we should look at the full context of that 60 month sentence. And whether, saying that we have to have that as the starting point necessarily if that just repeats some sort of problem. That the Fair Sentencing Act was intended to fix. So, I think that's an important consideration. The other factors that Judge Shea relies upon, I think, are all challengeable. He talks about his criminal history. His criminal history is accounted for. He's in category five if he's not a career offender. He talks about having committed the violation while on supervised release. Two points are included in your criminal history if you commit a violation on supervised release. Plus, he got a sentence for violating the terms of his supervised release. I think the entire balance of factors that Judge Shea relies upon, the disparity that we have here between the two sentencing ranges that we're talking about. And frankly, the fact that it's not a great burden on the system to send the case back, all counsel in favor of doing it. And one of the things I'd be worried about is creating some magic sentence for the case I would have given anyways, it doesn't take long before robotic incantations start to replace rational, fulsome thinking under the circumstances. If Judge Shea's a thoughtful judge, I don't always agree with him, but he's very thoughtful. And if he has to think about it in the context of, this guy's not a career offender, he might get a different answer. And because that could happen, it's not harmless. I have nothing further, unless the court has any questions. Thank you. Thank you. We'll reserve decision. The last case is on submission. I'll ask the clerk to adjourn.